The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the deletion of Findings of Fact 17 through 21; and the modification of Conclusion of Law 3; and Award paragraphs 2 and 4.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employer-employee relationship existed between the parties at all relevant times.
2. The defendant is a duly qualified self-insured.
3. The date of the injury giving rise to this claim was May 21, 1992.
4. The plaintiff's average weekly wage was $248.20, which yields a weekly compensation rate of $165.47.
5. The parties stipulated 415 pages of medical reports into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a 44 year old obese female, as noted by her treating physicians. The plaintiff had been employed as a beautician prior to 1988 and was unemployed from 1988-1992, and subsequently she enrolled at Davidson County Community College in the pharmacy technician program.
2. The plaintiff began working on March 16, 1992 on a schedule part-time, 2 to 3 hours per day for three days per week and full duty on the weekends with defendant-employer. The plaintiff was hired on full-time on May 17, 1992 on a 90 day probationary status, as was the standard hiring practice.
3. On May 21, 1992, the plaintiff "contends" that she was delivering medicine carts to the nursing stations in one of the bed towers, when a man came out of a doorway. She stated that she grabbed the cart with her right hand and braced her left foot and grabbed the left side of the cart with her left hand. The plaintiff further contends that she jerked the cart, popped her left shoulder, injured her back, and twisted her right ankle and knee.
4. The medicine carts used by defendants are on rollers and weigh approximately 100 pounds when fully loaded. The carts roll easily on the polished hospital floors in a manner similar to maneuvering a grocery cart. The medicine carts are not difficult to stop.
5. The plaintiff "testified" that she reported the incident and her injury to James E. Jones, Jr., who was the pharmacist on duty.
6. Mr. Jones received no report of any incident regarding a medicine cart from the plaintiff. Mr. Jones did recall one occasion when the plaintiff was sitting down and he asked if she was okay. The plaintiff replied that she had been in an automobile accident and was rear-ended by an uninsured driver. She told Mr. Jones that she had injured her back in the auto accident and was on medication for the injury.
7. On January 9, 1992, the plaintiff telephoned Dr. Thomas Terrell to advise that she had been in an automobile accident, and on January 27, 1992, Dr. Terrell saw the plaintiff at which time she complained of pain in her neck, shoulders, inability to sleep due to pain, left arm and shoulder pain, and frequent headaches.
8. Between May 1, 1992 and November 2, 1992, the plaintiff was seen on 6 occasions by Dr. Terrell, and she contacted his office for medication refills on 3 other occasions. However, she did not mention any incident at work regarding a medicine cart until the November 2, 1992 visit, when she advised Dr. Terrell that she had jerked a cart around and hurt herself in mid-May.
9. The plaintiff sought treatment from Dr. Chester Haworth, a neurologist with whom she had treated since 1982. The plaintiff related a history of having been in an auto accident in January of 1992, following which she began to experience low back pain which radiated to the left leg. The plaintiff did not mention any work-related incident involving a medicine cart. An MRI ordered on June 3, 1992 was reported as normal, while an EMG of the left leg showed a mile acute S-1 radiculopathy.
10. The plaintiff was seen by Dr. Haworth or his associate Dr. Ford on 11 occasions between May 28, 1992 and November 11, 1992, and called in for medication on 6 occasions. The plaintiff did not mention any incident which involved jerking a medicine cart.
11. On June 4, 1992, Martha Lyon, pharmacy supervisor, met with the plaintiff regarding problems with her job performance. The plaintiff advised Ms. Lyon that she had been under stress due to family problems and had been experiencing difficulty sleeping and blurred vision. The plaintiff did not report any incident to Ms. Lyon regarding jerking a medicine cart and injuring herself.
12. On June 9, 1992, Ms. Lyon again met with the plaintiff regarding her continued unsatisfactory job performance. The plaintiff broke down in the conference and admitted to Ms. Lyon that she had not been involved in an auto accident and was on pain medication for her back. She stated that this back injury sustained in the car accident had made it difficult for her to bend and load the medicine carts and that she also had difficulty moving the carts. She told Ms. Lyon that her doctor wanted her to be out of work, but she did not report any incident regarding jerking a medicine cart in Mid-May which resulted in an injury.
13. On June 14, 1992, the plaintiff requested a leave of absence, and she has not worked for defendant since that date.
14. By letter dated October 28, 1992 from attorney David S. Doherty on behalf of plaintiff, defendant-employer received its first notice that plaintiff was claiming an injury at work on or about June 1, 1992. A form 18, Notice of Accident was also filed at that time.
15. Anjie Spencer, risk manager for defendant-employer, investigated plaintiff's "alleged" injury, and on December 7, 1992, took a recorded statement from the plaintiff, at which time the plaintiff informed her that the injury had occurred around the middle of May.
16. On November 20, 1992, the plaintiff was seen by Dr. Haworth, at which time she informed him that her visit in May of 1992 was due to a worker's compensation injury. Dr. Haworth informed the plaintiff that he had no record in his notes of this injury ever having been reported, and the plaintiff attempted to influence Dr. Haworth to change his records to reflect a work-related injury report. Dr. Haworth declined to do so.
17. The plaintiff's testimony regarding an incident alleged to have occurred in Mid-May of 1992 involving the jerking of a medicine cart is not accepted as credible.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff has not sustained an injury by accident or specific traumatic incident arising out of and in the course of her employment. Therefore, she is not entitled to benefits under the Workers' Compensation Act. N.C. GEN. STAT. § 97-2 (6).
2. The undersigned is in the best position to decide questions pertaining to the credibility and truthfulness of the witnesses, including the plaintiff who claims compensation. Based upon all the evidence presented in this case, the undersigned concludes that plaintiff's allegations of an incident involving the jerking of a medicine cart in Mid-May of 1992 are not credible and her testimony is hereby rejected. The Industrial Commission is the sole judge of the truthfulness and credibility of the witnesses. Priddy v. Blue Bird Cab. Co., 9 N.C. App. 291,176 S.E.2d 26 (1970).
3. Pursuant to N.C. GEN. STAT. § 97-88.1, if the Industrial Commission shall determine that any hearing has been brought without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney upon the party who has brought them. The test is not whether the defense prevails, but whether it is based in reason rather than in stubborn, unfounded litigiousness. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982). In this case, the full Commission does not assess the cost of this claim against the plaintiff. The full Commission believes that plaintiff has brought this claim with reasonable ground. Defendants attorneys fees are not assessed against plaintiff.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Plaintiff's claim is and under the law must be DENIED.
2. Each side shall bear its own costs.
3. Defendant shall pay an expert witness fee in the amount of $160.00 to Dr. Thomas Terrell and $175.00 to Dr. Chester Haworth.
4. Plaintiff does not pay to the defendant any portion of the attorney's fees incurred in the defense of this claim.
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________________ J. RANDOLPH WARD COMMISSIONER
CMV/CNP/tmd 4/17/95; c:\cv\fc\m\fc272899