***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case and the parties are properly before the Commission.
2. All parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
3. Erie Insurance Group was the carrier on the risk.
4. The employee-employer relationship existed between the parties at all relevant times.
5. Plaintiff's average weekly wage was $599.48, which yields a compensation rate of $399.65 per week.
6. The parties stipulated to the following documentary evidence at the hearing before the Deputy Commissioner:
 a. Exhibit 1 — I.C. Forms 19, 18, 61, 33, 33R, January 14, 2002 Order and Motion to Compel Discovery and Defendants' Responses
b. Exhibit 2 — 19 pages of medical reports
c. Exhibit 3 — Defendants' Discovery Responses
d. Exhibit 4 — I.C. Form 22
e. Exhibit 5 — Plaintiff's Answers to Interrogatories
f. Exhibit 6 — Pins
g. Exhibit 7 — Plaintiff's Recorded Statement
h. Exhibit 8 — Recorded Statement of Eddie Smith
i. Exhibit 9 — Witness Statement of Eddie Smith
 j. Exhibit 10 — E-mail from Don Jones of East of Mesquite to Mike Holt
 k. Exhibit 11 — Affidavit of Marcia Cloutier of Lazy P Rodeo
l. Videotape, Marked as Defendants' Exhibit 1
7. The only issue for determination by the Commission is whether the claim was defended without reasonable grounds, such as to support the award of attorney's fees to plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was twenty-six years old and left-hand dominant.
2. Plaintiff was employed as a technician by Brake X-Perts, an automotive mechanic shop, since June 27, 2001. Plaintiff and his supervisor Chris Howell operated the South Boulevard store. Plaintiff generally opened the store at 7:00 a.m. and Mr. Howell reported to work at approximately 8:00 a.m.
3. On Saturday, October 6, 2001, plaintiff participated in a rodeo at the Lazy P in Bethlehem, North Carolina. Plaintiff did not complete his bull ride and he was not injured at the rodeo.
4. On Sunday, October 7, 2001, between 10:00 and 11:00 a.m., plaintiff went to the NAPA Parts Store, located near his employer's place of business, to purchase a nut and bolt to repair his rodeo spur. Eddie Smith was operating the NAPA store and he helped plaintiff find a bolt to repair the spur. Mr. Smith watched plaintiff use both hands to repair the spur. He saw no swelling or bandages on either of plaintiff's wrists.
5. Around 1:30 p.m. on October 7, 2001, plaintiff returned to the NAPA store to buy an automotive fuse for his brake lights. Mr. Smith observed plaintiff had injured or burned one of his fingers. In discussing the injury, plaintiff told Mr. Smith he burned his finger when welding the bolt and screw on the spur. Mr. Smith did not see any injury to plaintiff's left wrist.
6. On Monday, October 8, 2001, plaintiff arrived at defendant-employer's store at approximately 6:30 a.m. He raised the five garage doors, moved vehicles stored in the bays and prepared his tools. As he walked to turn on the "OPEN" sign, plaintiff tripped over an air hose and fell to the concrete floor. He put his hands out to brace the fall. Plaintiff's hands and knees hit the floor and he felt discomfort in his left wrist.
7. Plaintiff called regional manager Henry Duffield to report the accident.
8. At 8:00 a.m., Mr. Howell arrived at work and plaintiff reported the accident to him. Mr. Howell authorized plaintiff to get medical treatment.
9. Alfonso Darity, a route salesman for Unifirst Corporation, delivered uniforms to defendants on October 8, 2001 between 7:00 a.m. and 8:00 a.m. Mr. Darity recalled plaintiff holding his left wrist which appeared swollen.
10. While in route to the hospital, plaintiff stopped to show his fiancée, Angela Elrod, his left wrist. She observed that his hands and the knees of his pants were dirty.
11. At Gaston Memorial Hospital emergency room, plaintiff reported falling at work. After x-rays, he was referred to orthopedic surgeon Dr. Robert Blake.
12. Plaintiff reported to Dr. Blake that he fell and injured his left wrist at work. Dr. Blake found plaintiff had a fracture in the area of the navicular bone. Plaintiff was placed in a long arm cast. Dr. Blake ordered plaintiff out of work through December 3, 2001 due to the fractured left wrist.
13. On October 8, 2001, Tina Caldwell, defendants-carrier's adjuster, took a recorded statement from plaintiff, as well as from Eddie Smith.
14. On October 12, 2001, Chris Howell prepared an I.C. Form 19 which reflected that plaintiff had reported at 8:00 a.m. on October 8, 2001 that he was walking and tripped over an air hose and broke his left wrist.
15. Plaintiff was authorized to return to work on December 4, 2001 on light duty restrictions of no lifting over ten pounds and no pushing or pulling of more than 20 pounds.
16. Defendants hired two private investigators to follow plaintiff after he was released to return to work. The surveillance did not produce any evidence to contradict plaintiff's testimony.
17. Defendants offered plaintiff work on December 10, 2001 and plaintiff returned to work at the same or greater wages than the pre-injury wage.
18. By December 31, 2001, Dr. Blake issued revised restrictions to fifty pounds lifting and twenty pounds pushing, pulling or overhead.
19. Defendants failed to comply with North Carolina Industrial Commission Rules 609 and Rule 37 and did not timely or completely answer discovery requests. Plaintiff filed a Motion to Compel Discovery on January 29, 2002.
20. On April 8, 2002, Dr. Blake found plaintiff had reached maximum medical improvement, regained full left wrist mobility and retained a 0 % permanent partial impairment rating to his wrist.
21. At the hearing before Deputy Commissioner Dollar on April 9, 2002, defendants called nine witnesses. Several of the witnesses had already made written statements that were stipulated into the record by the parties and testified in accordance with those statements. Defendants later took a video deposition of Eddie Smith and Dr. Blake. Mr. Smith's statement was stipulated to by the parties, as were Dr. Blake's medical records.
22. The type of fracture plaintiff sustained to his left wrist was consistent with a fall such as that reported by plaintiff.
23. Although defendants contended plaintiff hurt his left wrist at the October 6, 2001 rodeo, the record is devoid of any evidence that he was injured at the rodeo.
24. On November 12, 2001, Ms. Caldwell filed a Form 61 denial of plaintiff's claim. The basis for the denial was noted as: "We respectfully deny your workers' compensation claim based on investigation to date, which indicates your injury by accident did not arise out of and in the course of your employment." The Form 61 did not contain a detailed statement of the basis for defendants' denial of the claim.
25. Mr. Howell testified that he found two ace bandage pins on or in the vicinity of the couch in the shop. He further contended that Eddie Smith told him plaintiff's wrist was swollen on Sunday when Mr. Smith saw plaintiff. Mr. Howell's testimony was specifically rejected as not credible by Deputy Commissioner Dollar and the Full Commission finds that Mr. Howell's testimony was not credible.
26. Dr. Blake felt that it would have been difficult for plaintiff to engage in the fine manipulation or manual dexterity necessary to insert the small screw and nut to repair a spur if he had fractured his wrist on or before October 7, 2001. Dr. Blake further stated that a person with a fracture would have swelling soon after the injury and would have been in intense, obvious pain.
27. When questioned about the two possible scenarios under which plaintiff fractured his wrist, Dr. Blake concluded it was more likely plaintiff sustained the navicular fracture from falling over the air hose on Monday than from falling off a bull on Saturday, based upon the type of fracture plaintiff sustained.
28. Plaintiff's counsel filed a petition requesting an attorney's fee on June 26, 2002. Plaintiff's counsel stated in his affidavit that he expended 56.60 hours of legal services in the preparation and prosecution of this claim before the Deputy Commissioner. Plaintiff's counsel further stated that his hourly fee for services is $300.00 and provided the affidavits of two other attorneys who stated that this is a reasonable fee for counsel's services.
29. On March 12, 2003, plaintiff's counsel filed a petition for additional attorney's fees in the amount of $6,000.00 for 20 hours of preparation and attendance at the Full Commission hearing on March 10, 2003. The petition is supported by an affidavit from plaintiff's counsel and a timesheet for this claim.
30. The Full Commission finds by the greater weight of the credible evidence that plaintiff sustained a compensable injury by accident in the course and scope of his employment with defendants on October 8, 2001.
31. The Full Commission finds by the greater weight of the credible evidence that defendants did not defend this claim upon reasonable grounds. Once Ms. Caldwell had taken the recorded statements in this case, she had only the uncorroborated hearsay statements of another individual whom she could not contact to get a recorded statement, despite having investigators attempt to locate the alleged witness. Mr. Howell's statements regarding the ace bandage or pins was specifically contradicted by Mr. Smith. Therefore, the best verifiable information before Ms. Caldwell did not support the decision to deny the claim. When Ms. Caldwell decided to deny the claim, she did not timely file a Form 61 and did not give a detailed basis of her decision on the Form 61. The speculative information defendants attempted to introduce as evidence at the hearing before the Deputy Commissioner only served to further support a finding that defendants engaged in unfounded litigiousness in this case.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 8, 2001, plaintiff sustained an injury by accident arising out of and in the course of the employment with defendants when he fell and fractured his left wrist. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability benefits at the rate of $399.65, for the period from October 8, 2001 through December 9, 2001. N.C. Gen. Stat. § 97-29.
3. Plaintiff retained no permanent partial impairment as a result of the compensable injury. N.C. Gen. Stat. § 97-31.
4. Plaintiff is entitled to have defendants provide all medical treatment arising from his injury by accident to the extent it tends to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. § 97-25.
5. As this claim was not defended upon reasonable grounds and defendants' actions were based upon stubborn, unfounded litigiousness, plaintiff is entitled to have defendants pay his reasonable attorney's fees. N.C. Gen. Stat. § 97-88.1; Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
6. Based upon the amount and type of work performed in pursuit of plaintiff's claim, the nature of the services provided, and the experience and skill of plaintiff's counsel, an hourly rate of $200.00 for plaintiff's counsel is reasonable, for a total attorney's fee of $11,320.00. N.C. Gen. Stat. § 97-90.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation in a lump sum to plaintiff for the period from October 8, 2001 through December 9, 2001 at the rate of $399.65 per week. This amount shall not be subject to an attorney's fee.
2. Defendants shall pay plaintiff's counsel the sum of $11,320.00 as a reasonable attorney's fee.
3. Defendants shall pay for all related medical expenses which are reasonably necessary to effect a cure, give relief or lessen the period of plaintiff's disability.
4. Defendants shall pay the costs.
This the ___ day of April 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/________________ BERNADINE BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/kjd